**No. 26-3131**

# In The United States Court of Appeals for the Ninth Circuit

PEPPERDINE UNIVERSITY,

*Plaintiff-Appellant,*

v.

NETFLIX, INC., WARNER BROS. ENTERTAINMENT, INC., AND KALING INTERNATIONAL INC.,

*Defendants-Appellees.*

Appeal from the United States District Court for the Central District of California (Hon. Cynthia Valenzuela, No. 2:25-cv-1429-CV-ADS)

## BRIEF OF 11 FORMER JUDGES AND ACADEMIC SCHOLARS AS AMICI CURIAE

Respectfully submitted,

Marc E. Hankin, Esq.
**HANKIN PATENT LAW, APC dba HPL INTELLECTUAL PROPERTY LAW**
*11414 Thurston Circle*
*Los Angeles, CA 90049*
*(310) 979-3600*
*Marc@HPL.Law*
***Counsel for 11 Amici Curiae***

# CERTIFICATE OF INTEREST

The Undersigned Counsel of Record for 11 Amici Curiae hereby certifies that the following information and any attached sheets are accurate and complete to the best of his knowledge. This Certificate of Interest is submitted by Counsel for 11 Amici Curiae pursuant to Federal Circuit Rule 47.4 and Federal Circuit Form 9.

1. **Represented Entities.** Provide the full names of all entities represented by undersigned counsel in this case (institutional affiliations listed in Appendix):
   The Honorable Paul R. Michel, Chief Judge (Retired)
   The Honorable Kathleen M. O'Malley, Circuit Judge (Retired)
   Richard A. Epstein
   Devlin Hartline
   Geoffrey A. Manne
   Adam Mossoff
   Lateef Mtima
   Kristen Jakobsen Osenga
   Zvi S. Rosen
   Susan Scafidi
   Ted M. Sichelman

2. **Real Parties in Interest.** Provide the full names of all real parties in interest for the represented entities. Do not list real parties if they are the same as the entities listed above: n/a.

3. **Parent Corporation and Stockholders.** Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities: None.

4. **Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court: None.

5. **Authorship and Funding.** Pursuant to Rule 29(a)(4)(E) of the Federal Rules of Appellate Procedure, the undersigned counsel certifies that: (1) no party's counsel authored this brief in whole or in part; (2) no party or party's counsel contributed

money that was intended to fund preparing or submitting the brief; and (3) no person—other than the amici curiae, or its counsel—contributed money that was intended to fund preparing or submitting the brief.

6. **Related Cases.** Provide the case titles and numbers of any case known to be pending in this court or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal. Do not include the originating case number(s) for this case: Not applicable.

7. **Organizational Victims and Bankruptcy Cases.** Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees): Not applicable.

This brief is submitted in accordance with Rule 29(a) of the Federal Rules of Appellate Procedure. All parties have consented to the filing of this brief.

Dated: October 9, 2026

Respectfully submitted,

**HANKIN PATENT LAW, APC dba**

**HPL INTELLECTUAL PROPERTY LAW**

/Marc E. Hankin/

Marc E. Hankin

***Counsel for 11 Amici Curiae***

# TABLE OF CONTENTS

**INTEREST OF AMICUS CURIAE……………………………………..……….1**

**SUMMARY OF ARGUMENT…………………………………………...………1**

**ARGUMENT…………………………………………………….…………..3**

**I. Trademark Law Unites the Interests of Consumers and Trademark Owners by Securing the Valuable Goodwill Embodied in Trademarks…3**

**II. The District Court Erred by Applying *Rogers* at the Pleading Stage Because Pepperdine Plausibly Alleged That Netflix is Using the Waves Marks as Source-Identifying Marks in Appropriating Pepperdine's Goodwill for Netflix's Commercial Benefit………………………………10**

**CONCLUSION…………………………………………………….…………14**

**APPENDIX OF AMICI…………………………………………………..….A-1**

***FULL LIST OF AMICI CURIAE****……………………………………….…...A-1**

## TABLE OF AUTHORITIES

### Cases

*Avery & Sons v. Meikle & Co.*, 81 Ky. 73 (1883) ....................................................12
*Blockbuster Videos, Inc. v. City of Tempe*, 141 F.3d 1295 (9th Cir. 1998)..............7
*Brookfield Comm'ns, Inc. v. West Coast Ent. Corp.*,
174 F.3d 1036 (9th Cir. 1999) .......................................................................8, 13
*E. & J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280 (9th Cir.1992).................6
*Grey v. Campbell Soup Co.*, 650 F. Supp. 1166 (C.D. Cal. 1986)............................7
*Hanover Star Milling Co.* v. *Metcalf*, 240 U.S. 403 (1916) .................................5, 9
*Inwood Lab'ys, Inc.* v. *Ives Lab'ys, Inc.*, 456 U.S. 844 (1982) ............................4, 8
*Jack Daniel's Properties, Inc. v. VIP Products LLC*, 599 U.S. 140 (2023).... passim
*Maier Brewing Co. v. Fleischmann Distilling Corp.*, 390 F.2d 117 (9th Cir. 1968) 7
*Mister Donut of America, Inc. v. Mr. Donut, Inc.*, 418 F.2d 838 (9th Cir.1969)......6
*Pacific Supply Co-op. v. Farmers Union Cent. Exch. Inc.*, 318 F.2d 894 (9th Cir. 1963).............................................................................................................6
*Partridge* v. *Menck*, 5 N.Y. Ch. Ann. 572 (1847) ....................................................8
*Playboy Enters., Inc. v. Netscape Comm'ns Corp.*,
354 F.3d 1020 (9th Cir. 2004) .........................................................................8, 9
*Prestonettes, Inc., v. Coty*, 264 U.S. 359 (1924) ...................................................4, 5
*Punchbowl Inc. v. AJ Press, LLC*, 90 F.4th 1022 (9th Cir. 2024).................. passim
*Qualitex Co. v. Jacobson Products Co.*, 514 U.S. 159 (1995)........................ 4, 6, 7
*Sunbeam Corp. v. Payless Drug Stores*, 113 F. Supp. 31 (N.D. Cal. 1953) .........6, 8
*United Drug Co. v. Theodore Rectanus Co.*, 248 U.S. 90 (1918)............................5

### Statutes

15 U.S.C. § 1114(1) ...............................................................................................6
15 U.S.C. § 1127 ....................................................................................................12
5 U.S.C. §1125(a)(1)................................................................................................6

### Other Authorities

Adam Mossoff, *Trademark as a Property Right*, 107 Ky. L.J. 1, 5 (2018) ............10
Francis H. Upton, *A Treatise on the Law of Trade Marks, With a Digest and Review of the English and American Authorities* 59 (1860) ...............................10
Mark P. McKenna, *The Normative Foundations of Trademark Law*, 82 Notre Dame L. Rev. 1840 (2007)..................................................................................10
S. Rep. No. 1333, 79th Cong., 2d Sess. 1-2 (1946)...................................................7
S. Rep. No. 1333, 79th Cong., 2d Sess., 3 (1946) .....................................................8
Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 2:2 (5th ed. 2022) ..................................................................................................8

## INTEREST OF AMICI[1]

The *amici curiae* are experts in trademark law, intellectual property law, or both. As former judges and scholars, they are concerned with ensuring that trademark law properly promotes and secures for owners of trademarks the valuable goodwill developed in their indicators of source. They have no stake in the parties or in the outcome of the case. The names and affiliations of the members of the *amici* are set forth in the Appendix below.

## SUMMARY OF ARGUMENT

The district court erred in applying the *Rogers* test to Pepperdine University's Complaint at the pleading stage, and thus it improperly dismissed Pepperdine's trademark infringement claims against Netflix. Pepperdine addresses the direct legal failings in the district court's decision. *Amici* offer additional support by identifying how the district court failed to heed longstanding precedents from the Supreme Court and this Court that secure a trademark owner's goodwill against misappropriation by the package of source-identifying marks used by Netflix.

In addition to protecting consumers from confusion, trademark law secures the valuable goodwill generated by enterprises like Pepperdine that create, operate,

[1] No counsel for any party authored this brief in whole or in part, and no person other than *amici* or their counsel made a monetary contribution to the preparation or submission of this brief or was intended to fund the preparation or submission of this brief. *See* Fed. R. App. P. 29(a)(4)(E).

and carefully steward its university products and services, such as its basketball team, the Waves. The legal interests in preventing consumer confusion and in securing goodwill are mutually reinforcing. The Supreme Court has consistently recognized that trademark law secures goodwill by preventing the misappropriation of trademarks that create confusion among consumers as to source and sponsorship. *See, e.g., Jack Daniel's Properties, Inc. v. VIP Products LLC*, 599 U.S. 140 (2023); *Qualitex Co. v. Jacobson Products Co.*, 514 U.S. 159 (1995); *Inwood Lab'ys, Inc.* v. *Ives Lab'ys, Inc.*, 456 U.S. 844 (1982); *Prestonettes, Inc., v. Coty*, 264 U.S. 359 (1924).

Pepperdine plausibly pled in its Complaint that Netflix is using without authorization its source-identifying marks in Netflix's new commercial product, a television series called *Running Point* about a fictional basketball team, called the Waves. In *Running Point*, Netflix is using as marks—as indicators of source—a package of source-identifying marks owned by Pepperdine. In dismissing Pepperdine's Complaint under the *Rogers* test, the district court failed to heed the Supreme Court's recent decision in *Jack Daniel's* and this Court's decision in *Punchbowl Inc. v. AJ Press, LLC*, 90 F.4th 1022, 1032 (9th Cir. 2024), that the *Rogers* test is inapplicable when a defendant uses marks as source-identifying marks.

As the Supreme Court and this Court has recognized, *Rogers* does not provide threshold immunity for an unauthorized source-identifying use of another's marks

simply because this use occurs in an expressive or fictional work. The district court erred in applying *Rogers* and thus improperly insulated Netflix's misappropriation of Pepperdine's goodwill. This Court should reverse this legal error and remand for the proper application of the likelihood of confusion test for trademark infringement.

## ARGUMENT

### I. Trademark Law Unites the Interests of Consumers and Trademark Owners by Securing the Valuable Goodwill Embodied in Trademarks

This case arose from Netflix's unauthorized commercial use of Pepperdine University's marks, thereby misappropriating Pepperdine's valuable goodwill. In *Jack Daniel's*, 599 U.S. 140, the Supreme Court recognized the central importance of protecting the goodwill developed by a trademark owner: trademark law "ensure[s] that the producer itself … will reap the financial rewards associated with the product's good reputation." *Id.* at 146. This has long been a foundational principle in American trademark law. *See, e.g.*, *Prestonettes,* 264 U.S. at 368 ("A trade-mark only gives the right to prohibit the use of it so far as to protect the owner's good will against the sale of another's product as his."); *United Drug Co. v. Theodore Rectanus Co.*, 248 U.S. 90, 97 (1918) (recognizing that the "function [of a trademark] is simply to designate the goods as the product of a particular trader and to protect his good will against the sale of another's product as his"); *Hanover Star Milling Co.* v. *Metcalf*, 240 U.S. 403, 412 (1916) ("Courts afford redress or relief upon the ground that a party has a valuable interest in the good will of his trade

or business, and in the trademark adopted to maintain and extend it."); *E. & J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1289 (9th Cir.1992) ("[T]he law is well settled that there are no rights in a trademark alone . . . apart from the business with which the mark has been associated.") (quoting *Mister Donut of America, Inc. v. Mr. Donut, Inc.*, 418 F.2d 838, 842 (9th Cir.1969)); *Pacific Supply Co-op. v. Farmers Union Cent. Exch. Inc.*, 318 F.2d 894, 905 (9th Cir. 1963) (stating that a "trademark is an arbitrary symbol … which designates and distinguishes such product and protects the manufacturer's good will"); *Sunbeam Corp. v. Payless Drug Stores*, 113 F. Supp. 31, 44 (N.D. Cal. 1953) ("A trademark symbolizes business good will.").

Although the legal test for liability for infringement of trademark or trade dress is framed in terms of whether the unauthorized use is "likely to cause confusion," 15 U.S.C. §§ 1114(1), 1125(a)(1), trademark law *both* secures commercial goodwill *and* prevents consumer confusion. *See Jack Daniel's*, 599 U.S. at 146 (recognizing that "trademarks benefit consumers and producers alike"); *Qualitex*, 514 U.S. at 164 ("The law thereby encourages the production of quality products, and simultaneously discourages those who hope to sell inferior products by capitalizing on a consumer's inability quickly to evaluate the quality of an item offered for sale." (quotations, citations, and alteration omitted)).

These two functions work in tandem, as the interests of consumers and trademark owners are united by goodwill. *See Blockbuster Videos, Inc. v. City of*

*Tempe*, 141 F.3d 1295, 1299 (9th Cir. 1998) (stating that the "purpose of the Lanham Act" is "to protect the goodwill created by using a uniform mark and to protect the ability of consumers to distinguish among competing producers"); *Maier Brewing Co. v. Fleischmann Distilling Corp.*, 390 F.2d 117, 120 (9th Cir. 1968) (quoting Senate report on Lanham Act that it "has as its object the protection of trade-marks, securing to the owner the good will of his business and protecting the public against spurious and falsely marked goods") (quoting S. Rep. No. 1333, 79th Cong., 2d Sess. 1-2 (1946)); *Grey v. Campbell Soup Co.*, 650 F. Supp. 1166, 1173 (C.D. Cal. 1986) (infringing a trademark is "to trade upon or otherwise benefit from the trademark owner's goodwill and reputation"). A commercial enterprise seeks to earn and secure the habitual patronage of its customers, while these customers wish to obtain an authentic product from this commercial enterprise.

This is the function of trademark law in securing the valuable goodwill created by an educational enterprise like Pepperdine and the marks Pepperdine created and uses as unique signifiers for its basketball team, the Waves. A trademark owner, like Pepperdine, seeks to prevent its goodwill from being wrongly diverted by confusion as to source just as consumers wish not to be wrongly misled into making a purchase they might not have otherwise made—such as paying for a television series about a basketball team with the same or similar indicia of the Waves basketball team. *See, e.g., Qualitex*, 514 U.S. at 164 ("[T]he law helps assure a producer that it (and not

an imitating competitor) will reap the financial, reputation-related rewards associated with a desirable product."); *Inwood*, 456 U.S. at 854 n.14 ("By applying a trademark to goods produced by one other than the trademark's owner, the infringer deprives the owner of the goodwill which he spent energy, time, and money to obtain." (citing S. Rep. No. 1333, 79th Cong., 2d Sess., 3 (1946)); *Brookfield Comm'ns, Inc. v. West Coast Ent. Corp.*, 174 F.3d 1036, 1057 (9th Cir. 1999) (stating that in infringing Brookfield's trademark, "West Coast will ... have gained a customer by appropriating the goodwill that Brookfield has developed in its 'MovieBuff' mark"); *accord Partridge* v. *Menck*, 5 N.Y. Ch. Ann. 572, 574 (1847) (stating a trademark owner "is entitled to protection against any other person who attempts to pirate upon [its] good will").

In this respect, courts secure trademarks as property interests derived from a commercial enterprise's underlying property right in its goodwill. *See Playboy Enters., Inc. v. Netscape Comm'ns Corp.*, 354 F.3d 1020, 1025 (9th Cir. 2004) (recognizing and discussing how a defendant's trademark infringement entails it having "misappropriated the goodwill" of the trademark owner); *Sunbeam Corp.*, 113 F. Supp. at 44 ("A trademark only gives the owner thereof the right to prohibit its use to deceive the public in a manner which injures his goodwill."); *McCarthy on Trademarks and Unfair Competition* § 2:2 (5th ed. 2022) ("Trademark law serves to protect consumers from deception and confusion over trademarks as well as to

protect the plaintiff's infringed trademark as property.").

In *Jack Daniel's*, the Supreme Court reaffirmed this core function of trademark law in securing a commercial enterprise's goodwill when its mark is used by another commercial entity "as a designation of source of the infringer's own goods," *Jack Daniel's*, 599 U.S. at 153 (citing 15 U.S.C. § 1127), as opposed to the use of a trademark "solely to perform some other expressive function." *Id.* This is the difference between a television show about a fictional Los Angeles basketball team in which one of the characters drinks a Coke Zero® in a scene and a television series about a Los Angeles basketball team using a package of marks associated with a real basketball team, Pepperdine's Waves. Netflix's television series is the latter scenario. This is corroborated by Netflix's use of the same and similar marks in its merchandise and in other products in promoting its television series, such as in tickets and advertising. This is classic "trademark piracy" of goodwill. *Playboy Enters., Inc.*, 692 F.2d at 1274-75. Against this piracy, Pepperdine has the "right to the continued enjoyment of [its] trade reputation and the good will that flows from it" through the "exclusive use" of its Waves marks. *Hanover Star*, 240 U.S. at 413.

Scholars have similarly recognized the core policy function of trademark law in securing the goodwill created by a commercial enterprise, such as educational enterprises like Pepperdine. In his preeminent 1860 treatise on trademark law, Francis Upton stated that "[a]n unlawful encroachment upon the *good will* of a

business, is sometimes the essence of the wrong involved in the violation of a trade mark." Francis H. Upton, *A Treatise on the Law of Trade Marks, With a Digest and Review of the English and American Authorities* 59 (1860) (emphasis in original). "In the nineteenth-century, courts first conceptualized a commercial enterprise's reputational value as 'goodwill,' and they secured it in part via a use-right or what earlier common law courts identified as a usufruct—the trademark." Adam Mossoff, *Trademark as a Property Right*, 107 Ky. L.J. 1, 5 (2018); *see also* Mark P. McKenna, *The Normative Foundations of Trademark Law*, 82 Notre Dame L. Rev. 1840, 1885 (2007) (explaining that "trademark rights were protected as property" by nineteenth-century courts, as these "[p]roperty rights arose out of particular uses of words or symbols in connection with a business, which was the ultimate object of protection.").

In this case, this Court should follow the *Jack Daniel's* Court in refraining from an abstract ruling on the legitimacy of the *Rogers* test as such. *See Jack Daniel's*, 599 U.S. at 153 ("Without deciding whether *Rogers* has merit in other contexts, we hold that it does not when an alleged infringer uses a trademark in the way the Lanham Act most cares about: as a designation of source for the infringer's own goods."). This Court can do that for the same reason that the Supreme Court found it unnecessary to decide the legitimacy of the *Rogers* test while still holding that the *Rogers* test was unavailing in *Jack Daniel's*: Netflix's unauthorized use of

a package of source-identifying marks misappropriates Pepperdine's goodwill in its own commercial product sold to its customers, the television series *Running Point*.

Netflix is using a source-identifying package of Pepperdine's marks for a commercial purpose in selling a commercial product to its own customers—the fictional Waves basketball team in the Netflix television show, *Running Point*. This is evidenced by Netflix's use of Pepperdine's marks throughout the entire television series, *e.g.*, it is the name of the fictional basketball team ("Waves"); its fictional team uses the same colors as Pepperdine's Waves (blue, orange, and white colors); and these and other marks and related associational features are used by Netflix in merchandise, tickets, and in other commercial and advertising activities for *Running Point*. The *Jack Daniel's* Court recognized that "*Rogers* does not apply when the challenged use of the mark is as a mark." *Jack Daniel's*, 599 U.S. at 163; *see also Punchbowl,* 90 F.4th at 1032 (quoting same). The district court should not have applied the *Rogers* test, and Netflix should not have received the benefit of immunity under the *Rogers* test, simply because Netflix is using Pepperdine's marks as marks—as indicators of source for its television series.

In using a source-identifying package of marks owned by Pepperdine in its own television series, Netflix is engaging in a classic case of misappropriation of goodwill. The district court's overbroad application of the *Rogers* text in dismissing Pepperdine's Complaint fails to give proper consideration to the twin functions of

trademark law—it neither protects consumers from confusion nor protects Pepperdine's investment of significant resources and stewardship of its goodwill. This Court should follow the longstanding "[s]ound policy" in trademark law that secures "the fruits of labor to the laborer" from this "grasp of piracy" by Netflix in misappropriating Pepperdine's goodwill. *Avery & Sons v. Meikle & Co.*, 81 Ky. 73, 87, 1883 Ky. LEXIS 33 (Court of Appeals of Kentucky 1883).

## II. The District Court Erred by Applying *Rogers* at the Pleading Stage Because Pepperdine Plausibly Alleged That Netflix is Using the Waves Marks as Source-Identifying Marks in Appropriating Pepperdine's Goodwill for Netflix's Commercial Benefit

The *Rogers* test provides no threshold immunity when a defendant uses a mark "to identify and distinguish his or her goods . . . from those manufactured or sold by others and to indicate the source of the goods[.]" 15 U.S.C. § 1127 (defining a "trademark"). In this case, Pepperdine plausibly alleged this fact in its Complaint: Netflix is using Pepperdine's marks in its own commercial product, its *Running Point* television series, and is using these marks in Netflix's promotional campaign materials for this television series. These allegations require a court to apply the standard likelihood of confusion test, not the threshold *Rogers* test that *Jack Daniel's* held inapplicable to such source-identifying uses of marks.

Pepperdine alleged in its Complaint that Netflix is using a source-identifying package of Pepperdine's marks for Netflix's new commercial product, the *Running Point* television series, including, among others: (1) the Waves team name; (2) the

blue, orange, and white colors of the Waves basketball team; (3) the Los Angeles-based location of the Waves basketball team; and (4) the "37" jersey, which is Pepperdine's founding year and an affiliated Waves mark. For almost nine decades, Pepperdine has created substantial and valuable goodwill for the university and its Waves basketball team in the use of these marks. Netflix misappropriated this goodwill in the use of the same or remarkably similar marks in its *Running Point* television series. *Cf. Brookfield Comm'ns, Inc.*, 174 F.3d at 1061-65 (explaining that using another's mark to divert initial consumer attention improperly benefits from the goodwill associated with it). Pepperdine's Complaint thus alleges a classic case of trademark infringement: Netflix is using Pepperdine's Waves marks to launch, identify, and promote its own commercial product for its own customers.

As the *Jack Daniel's* Court explained, trademark function is the only threshold inquiry in a trademark lawsuit. A court should ask only what the unauthorized use of a mark *does*, not whether a *creative genre* contains this unauthorized mark. *See Jack Daniel's*, 599 U.S. at 161 ("There is no threshold test working to kick out all cases involving 'expressive works.'"). If the defendant's commercial use of a mark functions to identify the defendant's product as a commercial product, the *Rogers* test does not apply—even if this use of the mark also communicates humor, commentary, or narrative meaning. *Id.* at 152-59.

This Court's decision in *Punchbowl*, 90 F.4th, makes this rule binding in this

case. This Court held in *Punchbowl* that this circuit's *Rogers* precedents were overruled by *Jack Daniel's* insofar as these court decisions applied the *Rogers* test as a threshold inquiry to exempt from liability all unauthorized uses of marks solely because they were in expressive works. *See id.* at 1027-31. The *Punchbowl* Court states the key problem with this now-overruled approach, as identified by the *Jack Daniel's* Court: Because "'trademarks are often expressive,' applying *Rogers* whenever a trademark has expressive connotations would allow *Rogers* to 'take over much of the world.'" *Id.* at 1030 (quoting *Jack Daniel's*, 599 U.S. at 158). The safe harbor exemption swallows the rule. Given that the defendant in *Punchbowl* used the plaintiff's mark to identify and distinguish the defendant's commercial product, this Court reversed the district court's decision based on the *Rogers* test and remanded the case for the district court to apply the standard test of likelihood of confusion. *Id.* at 1031-32.

Pepperdine alleges that Netflix's source-identifying package of Waves marks functions as marks for Netflix's television series. Pepperdine plausibly established numerous examples of the source-identifying use of its marks by Netflix. The Waves marks are not passing or incidental references in the *Running Point* television series, such as a character drinking a Coke Zero® in a scene in one of the episodes. The marks used by Netflix comprise the core identity of Netflix's commercial product in its television series: they are on the uniforms, arena signage, graphics, apparel,

trailers, premier materials, cast publicity, and social-media promotion materials for *Running Point*. The declaration by Netflix that it is the "Home of the Los Angeles Waves" is marketplace language presenting the Waves and related Pepperdine marks as the commercial entertainment product sold to the customers of Netflix.

Netflix's commercial use of the package of Waves marks as source-identifying marks is not erased by the district court's finding that Netflix's Waves basketball team is fictional. First, *Punchbowl* rejected this either-or premise as a justification for applying the *Rogers* test as a threshold inquiry: expressive meaning and source-identifying use of marks can coexist. *See Punchbowl*, 90 F.4th at 1032 ("*Jack Daniel's* was not limited to direct references or parodies."). Second, the district court's attempt to distinguish Netflix's use of the source-identifying package of Pepperdine's Waves marks from VIP's Bad Spaniels in *Jack Daniel's* by arguing that Netflix is engaged in fiction, not parody, is a distinction without a difference. Netflix is using a source-identifying package of marks of Pepperdine's Waves basketball team for its television series, *Running Point*. Given this fact, it is difficult to discern the limiting principle in the district court's application of the *Rogers* test to immunize from liability an unauthorized use of a source-identifying package of marks simply because it occurs in an artistic work of fiction, "Fictional, therefore *Rogers*" simply repeats the exact same error abrogated by the *Jack Daniel's* Court, "humorous, therefore *Rogers*."

In sum, Pepperdine properly pled that Netflix is using a source-identifying package of marks associated with Pepperdine's Waves basketball team and thus misappropriates Pepperdine's goodwill. This is the "cardinal sin" of trademark law. *Jack Daniel's*, 599 U.S. at 157. Netflix's unauthorized use of marks in an expressive work does not justify using the *Rogers* test to "insulate[] from ordinary trademark scrutiny the use of trademarks as trademarks." *Id*. at 156. Moreover, Netflix has no other *Rogers*-related justifications for the unauthorized use of its package of Pepperdine's marks; Netflix still has the right of free speech, for example, to create and sell to its customers a television series about a basketball team with the same characters, plots, location and other creative indicia of *Running Point*. Netflix is simply prohibited from pirating the goodwill of Pepperdine in its unauthorized use of a source-identifying package of marks owned by Pepperdine.

## CONCLUSION

This Court should reverse the district court and remand for further proceedings under the trademark infringement test for likelihood of confusion.

Dated: October 9, 2026

Respectfully submitted,

**HANKIN PATENT LAW, APC dba HPL INTELLECTUAL PROPERTY LAW**

/Marc E. Hankin/

Marc E. Hankin

***Counsel for 11 Amici Curiae***

APPENDIX OF AMICI

***Full List of Amici Curiae****

The Honorable Paul R. Michel
*Chief Judge (Retired)*
United States Court of Appeals for the Federal Circuit

The Honorable Kathleen M. O'Malley
*Circuit Judge (Retired)*
United States Court of Appeals for the Federal Circuit

Richard A. Epstein
*Laurence A. Tisch Professor of Law*
New York University School of Law
*Peter and Kirsten Bedford Senior Fellow*
Hoover Institution, Stanford University
*James Parker Hall Distinguished Service Professor of Law Emeritus*
University of Chicago Law School

Devlin Hartline
*Legal Fellow*
Hudson Institute
*Former Assistant Professor of Law*
Antonin Scalia Law School
George Mason University

Geoffrey A. Manne
*President and Founder*
International Center for Law & Economics

Adam Mossoff
*Professor of Law*
Antonin Scalia Law School
George Mason University

* Institutions of all signatories are for identification purposes only. The undersigned do not purport to speak for their institutions, and the views of *amici* should not be attributed to these institutions.

Lateef Mtima
*Professor of Law*
Howard University School of Law

Kristen Jakobsen Osenga
*Austin E. Owen Research Scholar & Professor of Law*
University of Richmond School of Law

Zvi S. Rosen
*Assistant Professor of Law*
Southern Illinois University School of Law

Susan Scafidi
*Professor and Founder & Director*
Fashion Law Institute
Fordham University School of Law

Ted M. Sichelman
*Judith Keep Professor of Law and Herzog Endowed Scholar*
University of San Diego School of Law